**Charles E. MOORE, Appellant,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Appellee.**

**No. 13222.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1969.

Decided Dec. 1, 1969.

than $1,000 or imprisoned not more than one year, or both."

Health, Education and Welfare on the finding that he had not become disabled, within the meaning of the Act, §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423, before his insurance coverage expired on September 30, 1960. On review, the Federal Court for the Southern District of West Virginia, clearly charting the apt legal principles, affirmed, believing the finding was supported by substantial evidence. Social Security Act § 205(g), 42 U.S.C. § 405(g). Moore v. Finch (S.D.W.Va. 1968). Nevertheless, we must vacate the Court's order and remand the cause to the Secretary for a rehearing because of the Hearing Examiner's errors in ruling on the evidence.

Moore's claimed disability was diagnosed in 1966 and 1967 as a psychoneurotic anxiety reaction preventing him from engaging "in any substantial gainful activity". His demand was supported by his wife and other witnesses, all of whom gave evidence in regard to his odd behavior and habits during the period from 1958 to 1967.

The Secretary now concedes that "the psychiatric examinations in 1966 and 1967 show that *at that time* claimant's mental and emotional status was impaired." However, relying on medical reports from 1958 and 1963, he emphatically denies, as he has at each stage of this proceeding, that the impairment existed prior to September 30, 1960—the end of the insurance coverage period.

A vocational expert called by the Secretary testified that jobs on which, in her opinion, Moore could work were available not too far away at the cut-off date. Nevertheless, she said further that if Moore's 1966–67 weakness of mind had developed before September 30, 1960, he would have been unable to perform any substantial work.

Chronicling Moore's history, the Examiner related that he was born in 1922, completed the seventh grade and is presently able to read and write. His first employment was in the timber industry. Afterwards he labored in coal mines until sometime in 1957. In the early

James M. Haviland, Princeton, W. Va. (Naomi Weintraub, Bluefield, W. Va., on brief), for appellant.

George D. Beter, Asst. U. S. Atty. (Milton J. Ferguson, U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Social Security benefits were denied Charles E. Moore by the Secretary of

1960s, he held a job under the Aid to Families with Dependent Children of the Unemployed program of West Virginia.

Concluding, the Examiner denied Moore's claim. He found that on September 30, 1960, Moore was "capable of engaging in substantial gainful work within his reasonable work area in jobs * * * which did not require strenuous physical labor, did not require heavy lifting, and were generally available in business activities where the claimant would have been considered as employable therefor."

This determination must be reconsidered, we think, for it rests first upon an incomplete and then upon a mistaken assessment of the evidence regarding the onset of the psychoneurosis. To start with, the Examiner noted that "[t]he record as it now stands does not contain satisfactory *objective evidence*, reasonably required, to show industrial or serious social maladjustment within the period of coverage." (Accent added.)

■ But "objective evidence" is not an indispensable type of proof in evaluation of disability. Flake v. Gardner, 399 F.2d 532, 540 (9 Cir. 1968); Whitt v. Gardner, 389 F.2d 906, 909 (6 Cir. 1968). With its 1968 amendment, applicable here, the Act demands only that the infirmity be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Objective evidence is not named as a requisite.

■ Next, the Examiner erred in declining to give retrospective consideration of the evidence. He expressed it in this way:

"Reports of medical and psychoneurotic evaluations subsequent to the period of coverage are accepted as proper for that time, but *not as relating back to* before September 30, 1960."

This circumscription of inferences was hurtful to the claimant. His most cogent proof of his feebleness of intellect was the examinations in 1966 and 1967. Notwithstanding the concessum of the Secretary that the deficiency was present in those years, the Examiner would not look to this possessed subnormality as reflective of a possible earlier and progressive degeneration.

True, six or seven years had elapsed between the initial appearance and the inescapable recognition of the complete failing. Nevertheless, the record is not so persuasive as to rule out any linkage of the final state of Moore with his earlier symptoms. Certainly, it is arbitrary to declare peremptorily that the two could not be related in tracing causation. The possibility of this antecedence is enhanced somewhat by the lay observations of Moore's strange behavior before September 1960.

Because of these impermissible rulings of the Examiner in assaying the weight and fineness of the proof, the case should be returned to the Secretary to judge the parties' contentions free of these misunderstandings. The District Judge is requested to vacate his order and remand the cause to the Secretary for a rehearing.

Vacated, with directions.