GEORGE MILTON LACKEY v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF MEDICAL ASSISTANCE

No. 88PA82

(Filed 13 July 1982)

1. **Social Security and Public Welfare § 1— Medicaid meaning of disability—federal decisions not binding**

     Federal decisions interpreting and applying the definition of disability in the federal Social Security Act are not necessarily binding on the North Carolina Supreme Court.

2. **Administrative Law § 4; Social Security and Public Welfare § 1— social security hearing—report evaluating plaintiff's medical evidence**

     A report prepared by defendant agency's medical advisor evaluating plaintiff's medical evidence was admissible in an administrative hearing to determine whether defendant was entitled to Medicaid disability benefits since the report was a proper use of defendant's "experience, technical competence and specialized knowledge" within the meaning of G.S. 150A-30.

3. **Social Security and Public Welfare § 1— report evaluating medical evidence—no substantial evidence to support denial of Medicaid benefits**

     Where a report prepared by defendant agency's medical advisor evaluating plaintiff's medical evidence was the only evidence supporting a denial of Medicaid disability benefits to plaintiff and was contrary to all the other medical evidence as well as the opinions of the treating physicians, the report did not constitute substantial evidence to support a decision denying such benefits to plaintiff.

**4. Social Security and Public Welfare § 1— Medicaid disability benefits—burden of proof**

In order to recover Medicaid disability benefits, plaintiff has the burden of proving that he suffers from a physical or mental impairment which can be expected to last for a continuous period of not less than 12 months and which not only renders him unable to perform his usual job, but given his age, education and experience, prevents him from engaging in any other kind of substantial gainful employment existing in the national economy. However, once plaintiff has established that he is disabled and can no longer perform his usual work, the burden of going forward shifts to the defendant agency to show that there are other specific jobs which exist in the national economy that plaintiff can perform.

**5. Social Security and Public Welfare § 1— Medicaid disability benefits—sufficiency of medical reports**

Medical reports and opinions must be supported by medically acceptable clinical or laboratory diagnostic data or findings in order to establish disability under the Social Security Act, but the medical reports and opinions need not be supported by x-rays or other "objective" tests. 42 U.S.C. § 1382(c)(3)(C).

ON certiorari to review the decision of the Court of Appeals, 54 N.C. App. 57, 283 S.E. 2d 377 (1981), reversing judgment entered in favor of defendant Department of Human Resources by *Farmer, J.*, at the 20 October 1980 Session of WAKE Superior Court.

This cause arises out of the denial of medical assistance (Medicaid) benefits sought by plaintiff after he received a stab wound to his abdomen on 6 May 1978 which seriously lacerated his liver.

Plaintiff initially applied to the Iredell County Department of Social Services for Medicaid disability benefits on 14 July 1978. The Iredell County department forwarded plaintiff's application to the Disability Determination Section of the N.C. Department of Human Resources (hereinafter DDS) for evaluation. DDS reviewed the medical records submitted and advised that benefits should be denied because plaintiff was not "disabled" under Social Security standards as the "impairment should not be disabling for 12 months." The application was re-opened on 11 October 1978 to permit consideration by DDS of additional medical records submitted by plaintiff. After evaluating this additional evidence of disability, however, DDS reached the same conclusion as before and advised that the claim be denied. By notice dated 3 November 1978, plaintiff's application for Medicaid disability

benefits was formally denied by the Iredell County Department of Social Services.

On 8 November 1978 plaintiff, acting without assistance of legal counsel, gave notice of appeal to the Department of Human Resources for an administrative hearing pursuant to G.S. 108-44.[1] A hearing was held on 24 January 1979. At that hearing additional medical evidence was submitted. The hearing officer referred this evidence to DDS with a request that plaintiff's application be reevaluated in light of the additional information. DDS again concluded that plaintiff's condition was not disabling for a period of 12 months because the medical records revealed that "the drainage has now stopped and his wound is clear."

On 4 June 1979 defendant's administrative hearing officer rendered a decision finding the denial of plaintiff's application correct because his condition had not been disabling for 12 consecutive months.

On 3 July 1979, plaintiff petitioned for judicial review by the Superior Court of Wake County. Although the hearing was originally scheduled for 28 April 1980, it was continued by mutual consent of the parties in order to allow DDS to reconsider its decision in light of additional medical records from the N.C. Department of Corrections' Central Hospital discovered shortly before the hearing.

DDS reaffirmed its decision that plaintiff did not meet the disability standard.

On 6 October 1980 the case was heard by Judge Farmer who proceeded on the record developed at the administrative level. This included all medical data previously considered by defendant. The court neither heard testimony nor took new evidence. After reviewing the record, Judge Farmer made findings of fact and conclusions of law. He ordered that the decision of defendant denying benefits to plaintiff be affirmed.

Plaintiff appealed to the Court of Appeals. The Court of Appeals reviewed Judge Farmer's order pursuant to the standards set forth in the Administrative Procedures Act, G.S. 150A-51. In

1. The General Assembly has repealed Chapter 108 and in its place enacted Chapter 108A, effective 1 October 1981. 1981 Session Laws, ch. 275.

an opinion by Wells, J., that court reversed the order of the superior court, holding that the decision of defendant was "both affected by errors of law and was unsupported by substantial evidence." 54 N.C. App. at 61.

Defendant petitioned this court for a writ of certiorari. That petition was allowed on 3 March 1982.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Henry T. Rosser for defendant-appellant.*

*Turner, Enochs & Sparrow, P.A., by Wendell H. Ott and B. J. Pearce for petitioner-appellee.*

BRITT, Justice.

We agree with the Court of Appeals that the appropriate standard of review in this action is provided by the review provisions of the Administrative Procedures Act. G.S. 150A-51 provides in pertinent part that a reviewing court may reverse the decision of an agency if:

"[T]he substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions or decisions are:

\*   \*   \*

(4) Affected by . . . error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted . . . ."

We also agree with the Court of Appeals that the defendant erroneously denied plaintiff's application for Medicaid benefits in that defendant's decision was both affected by errors of law and unsupported by substantial evidence. However, careful study of the Social Security and Medicaid laws requires us to modify some of the holdings made by the Court of Appeals in reaching its decision to reverse.

I

The elemental question we must answer is whether defendant's decision that plaintiff was not disabled was supported by

substantial evidence. However, before that question can be answered we need to address several other issues bearing directly on the ultimate outcome. The first of these requires a determination of the law applicable to this case.

Medicaid, established by Congressional enactment of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative federal-state program providing medical assistance and other services to certain classes of needy persons. States which adopt the program and administer it in conformity with federal laws and regulations receive federal funds which defray a substantial portion of the program costs. Participation by a state in the Medicaid program is entirely optional. However, once an election is made to participate, the state must comply with the requirements of federal law. *Harris v. McRae*, 448 U.S. 297 (1980); *Smith v. Miller*, 665 F. 2d 172 (7th Cir. 1981); *Alabama Nursing Home Association v. Harris*, 617 F. 2d 388 (5th Cir. 1980). North Carolina adopted the Medicaid program through the enactment of Part 5, Article 2, Chapter 108 of the General Statutes, amended and recodified effective 1 October 1981 at Part 6, Article 2, Chapter 108A.

In order for the state Medicaid program to qualify for federal grant funds, the state must develop a "plan for medical assistance", the contents of which are prescribed by 42 U.S.C. § 1396(a). 42 U.S.C. § 1396a(a)(5) indicates that the determination of eligibility for medical assistance shall be made under the disability standards of Title XVI of the Social Security Act, Supplemental Security Income (SSI). 42 U.S.C. § 1381 *et seq.*

Disability under title XVI is partially defined as follows:

"An individual shall be considered to be disabled for purposes of this sub-chapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(c)(3)(A).

The statutes establishing the medical assistance program in North Carolina specifically provide that "[a]ll of the provisions of the federal Social Security Act providing grants to the state for

medical assistance are accepted and adopted and the provisions of this Part shall be liberally construed in relation to such act so that the intent to comply with it shall be made effectual . . . ." G.S. 108A-56 (formerly G.S. 108-61).

The federal judiciary has amassed a substantial body of case law interpreting the disability provisions of the Social Security Act and the regulations promulgated thereunder. The vast majority of these cases involve interpretation of the disability definition under Title II of the Social Security Act, Federal Old Age, Survivors and Disability Insurance Benefits. 42 U.S.C. § 401 *et seq.* There are notably few decisions directly interpreting and applying the Title XVI SSI disability definition. In those disability cases which have arisen under Title XVI, however, the federal courts have looked to decisions under Title II and found them to be persuasive authority. *Strickland v. Harris*, 615 F. 2d 1103 (5th Cir. 1980). This is so because the relevant provisions of Title II are identical to those of Title XVI. Further, judicial review of Title XVI SSI disability determinations, is governed by the judicial review provisions of Title II, 42 U.S.C. § 405(g). 42 U.S.C. § 1383 (c)(3).

[1] In its effort to resolve the legal issues presented by the case at bar, the Court of Appeals found that the federal decisions interpreting the Title II disability definition were binding on the North Carolina courts. We disagree. These federal decisions, and those interpreting and applying the Title XVI SSI disability definition are not necessarily controlling on this court. *See Unemployment Compensation Commission v. Trust Co.*, 215 N.C. 491, 2 S.E. 2d 592 (1939). However, we do deem them to be persuasive authority on the relevant issues.

II

[2] We next focus on the issue of whether the report evaluating plaintiff's medical evidence prepared by defendant's medical advisor, Dr. Cozart, was admissible evidence. The Court of Appeals, without discussing the question, held that the evaluation was not evidence. We disagree.

It is clear that the written medical reports of physicians are admissible evidence in social security hearings. *Allen v. Weinberger*, 552 F. 2d 781, 786 (7th Cir. 1977); *Landess v. Weinberger*, 490

F. 2d 1187, 1189 (8th Cir. 1974); *see also Richardson v. Perales*, 402 U.S. 389 (1971).[2]

Further, such reports are acceptable as evidence under state law as recognized by the N.C. Administrative Procedures Act, G.S. 150A *et seq.* Specifically:

> "An Agency may use its experience, technical competence, and specialized knowledge in the evaluation of evidence presented to it." G.S. 150A-30.

One of the purposes behind the creation of administrative agencies was the necessity for the supervision and experience of specialists in difficult and complicated fields. *See Elmore v. Lanier*, 270 N.C. 674, 155 S.E. 2d 114 (1967); 1 Am. Jur. 2d, Administrative Law § 12 (1962).

The complex area of disability determinations under the Social Security Act is indubitably an appropriate area for the use of experts, especially medical experts, and is essential to its purpose and function. The reports resulting from defendant's medical advisor's evaluation of an applicant's medical records obviously represent a proper and acceptable use of defendant's "experience, technical competence and specialized knowledge." Such reports are admissible evidence in administrative hearings and subsequent judicial review. The Court of Appeals should have so considered Dr. Cozart's report in its review of the evidence.

### III

[3] Having concluded that the report of defendant's medical advisor was evidence, we are now confronted with the issue of the proper weight to be given it in our evaluation of the record. That report was the sole evidence presented by defendant which supports its decision to deny disability benefits to plaintiff. We must determine, therefore, whether Dr. Cozart's report constituted substantial evidence to support defendant's decision.

As indicated above, our conclusion will rest on whether there was substantial evidence in view of the entire record as submit-

2. The use of medical advisors was expressly approved in *Richardson v. Perales, supra.* That opinion described them as used "primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." 402 U.S. at 408.

ted. G.S. 150A-51(5). This standard of judicial review in North Carolina is known as the "whole record" test. *Thompson v. Wake County Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). The "whole record" test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached. *Id.* at 410.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977). It is more than a scintilla or a permissible inference. *Comr. of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975).

With these principles in mind we now turn to the medical evidence presented in the record.

Plaintiff's evidence revealed that he was initially admitted to Statesville's Iredell Memorial Hospital through the emergency room on 6 May 1978 with a stab wound in his abdomen. The following day an exploratory laparotomy disclosed that the wound had penetrated the dome of his liver causing severe hemorrhaging. A large Penrose drain was inserted into the wound.

On 8 May 1978 plaintiff was admitted to Baptist Hospital in Winston-Salem. His admission history and physical examination revealed the same stab wounds described above plus a collection of blood in the right pleural cavity. Plaintiff was discharged from Baptist Hospital back to the care of Dr. Goode in Statesville on 17 May 1978 following a clearing of the pleural cavity and removal of the Penrose drain.

On 1 June 1978 plaintiff was readmitted to Baptist Hospital, bleeding from the injury to his liver. He underwent two additional surgical operations to address problems associated with a liver abscess, bleeding, and a removal of a necrotic portion of the gallbladder. Dr. J. H. Meredith was the surgeon in charge of plaintiff's case.

On 21 July 1978, plaintiff was discharged from Baptist Hospital. The discharge diagnosis indicated that he had a healing

billiary cutaneous fistula from a hepatic abscess secondary to the trauma. During his stay from 1 June to 21 July, plaintiff's weight dropped from 135 pounds to 103 pounds. Part of his course of treatment at home required a special dietary supplement to provide him with adequate nutrition.

Plaintiff was again admitted to Baptist Hospital on 31 July 1978. During the two weeks after his discharge plaintiff's weight dropped from 103 pounds to 95 pounds. His admission on 31 July was for "evaluation of his nutritional and failing status."

In a diagnostic report requested by the Iredell County Department of Social Services dated 7 August 1978, Dr. Scott Chatham of Baptist Hospital further defined plaintiff's condition. This report showed that plaintiff continued to experience drainage of bile and pus from a large open wound in his abdomen and suffered from general atrophy of the bones, joints and muscles. It also noted that it would be very difficult to maintain nutrition with the amount of protein being lost through the fistula, that plaintiff required virtual bedrest for the fistula to heal and would need an NG feeding tube for an indeterminate period of time. Dr. Chatham indicated that plaintiff would be incapacitated for work for a period "probably greater than one year."

A summary of outpatient visits and evaluations by Dr. Meredith from 29 August 1978 through 6 March 1979 revealed that plaintiff's fistula continued to drain. In a letter dated 6 March 1979, Dr. Meredith stated: "Mr. Lackey's fistula stopped draining just two days ago. Today the drainage from two sites in his abdominal wound is clear. Let's hope that he has stopped draining and that he won't get an abscess. He was instructed that if he does get an abscess to return here."

In another letter dated 15 August 1979, Dr. Meredith indicated that by May 1979 plaintiff's drainage had completely stopped only to reoccur in June 1979. He also noted that the primary disabling factors were the extensive management problems associated with the billiary fistula and a general weakened and undernourished physical condition produced by poor nutrition again associated with the fistula. Dr. Meredith further stated: "On January 22, 1979, and again on July 6, 1979, I certified that Mr. Lackey had been totally disabled from May 5, 1978. In retrospect,

I see no reason to modify that opinion. For all practical purposes, Mr. Lackey has simply been unable to engage in any substantial physical activity."

Finally the record contains a discharge summary from the N.C. Department of Correction's Central Hospital indicating that from 18 July 1979 through 5 September 1979 plaintiff was still experiencing watery drainage from the fistula.

Defendant's denial of Medicaid benefits was based on its determination that plaintiff's condition would not be disabling for more than 12 months. The sole evidence submitted by defendant supporting this determination was the evaluation by Dr. Cozart of plaintiff's medical records, specifically plaintiff's outpatient treatment on 24 October 1978, 14 November 1978 and 6 March 1979.[3] It is important to note that Dr. Cozart never saw or examined plaintiff, nor conducted any independent laboratory tests.

Although the reports of non-examining physicians may in some circumstances constitute substantial evidence to support an agency's determination, *see Oldham v. Schweiker*, 660 F. 2d 1078 (5th Cir. 1981); *Janka v. Secretary, H.E.W.*, 589 F. 2d 365 (8th Cir. 1978); they deserve little weight in the overall evaluation of disability. *Veal v. Califano*, 610 F. 2d 495, 497 (8th Cir. 1979); *Allen v. Weinberger, supra*, at 786; *Landess v. Weinberger, supra*, at 1190. Further, it has been held specifically that where the non-examining physician's opinion is the only evidence supporting a denial of disability benefits and is contrary to all the medical facts as well as the opinion of the treating physician, that opinion alone cannot constitute substantial evidence to support a conclusion relying solely on it. *Strickland v. Harris, supra; Johnson v. Harris*, 612 F. 2d 993 (5th Cir. 1980); *Martin v. Secretary, H.E.W.*, 492 F. 2d 905 (4th Cir. 1974); *Hayes v. Gardner*, 376 F. 2d 517 (4th Cir. 1967).

---

3. It is worthy of note that in his report Dr. Cozart stated: "The drainage has now stopped and his wound is clear." To the contrary, Dr. Meredith's report of 6 March 1979 stated "Mr. Lackey's *fistula* stopped draining just two days ago. Today the drainage from *two sites in his abdominal wound* is now clear." Dr. Cozart apparently misunderstood the medical data before him. According to Dr. Meredith the billiary fistula had stopped draining, but the wound itself was still draining a clear discharge. This apparent misreading renders Dr. Cozart's report of questionable value. However, because the issue is raised by the holding in the Court of Appeals, we will address the legal implications presented by the existence of the report.

In the case at bar, the report prepared by Dr. Cozart, the non-examining physician, was the sole evidence supporting defendant's conclusion that plaintiff's disability would not continue for 12 months. The opinions of Dr. Meredith and Dr. Chatham, plaintiff's treating physicians, both expressed opinions to the contrary.

In addition to their considered opinions' were plaintiff's medical treatment records which indicated that even as of late summer 1979, some 17 months after the original injury, plaintiff was still being treated for and having drainage from the fistula.

We hold that although Dr. Cozart's report was evidence, standing alone it was not substantial evidence to support defendant's denial of disability benefits.

IV

[4] The next issue we must resolve involves the burden of proving disability in order to secure Medicaid benefits.

Judge Farmer's judgment included the following pertinent conclusion of law:

1. The petitioner had the burden of proving that he had a medically determinable physical or mental impairment which had lasted or could be expected to last for a continuous period of at least twelve (12) months from May 5, 1978, the date of injury and, further, that the impairment prevented him from engaging in any activity during the entire twelve (12) month period which would produce earnings of at least $260 per month.

The Court of Appeals discerned that the thrust of defendant's decision and Judge Farmer's conclusion was that plaintiff had the burden not only of showing that his physical impairment prevented him from engaging in his usual employment, but also that he was prevented from engaging in any substantial gainful activity. The Court of Appeals went on to hold that plaintiff's burden was not so heavy; that after plaintiff made a showing that he was unable to engage in his usual employment, the burden then shifted to defendant to show that plaintiff had the capacity to perform other specific jobs existing in the national economy.

After careful study of the numerous federal decisions dealing with this issue, we conclude that both the Court of Appeals and Judge Farmer were correct.

The applicable complete federal definition of disability is contained in 42 U.S.C. § 1382c(a)(3) as follows:

(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

In support of Judge Farmer's conclusion of law we find that the burden is on plaintiff to prove he is disabled within the meaning of the social security statutes. *Fortenberry v. Harris*, 612 F. 2d 947 (5th Cir. 1980); *Johnson v. Harris, supra.* Plaintiff's burden is considered to be a very heavy one. Indeed it is so stringent

that it has been described as bordering on the unrealistic. *Walden v. Schweiker*, 672 F. 2d 835 (11th Cir. 1982); *Johnson v. Harris, supra.*

To meet this burden plaintiff must show that he suffers from a physical or mental impairment which can be expected to last for a continuous period of not less than 12 months, that not only renders him unable to perform his usual job, but given his age, education and experience, prevents him from engaging in any other kind of substantial gainful employment existing in the national economy. *Johnson v. Harris, supra.*

However, plaintiff need not establish all these factors initially. As was stated in an early social security decision on this issue:

"Under the Social Security Act . . . it is not the burden of the claimant to introduce evidence to negative every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job."

*Rice v. Celebreeze*, 315 F. 2d 7, 17 (6th Cir. 1963).

Once plaintiff has established that he is disabled and can no longer perform his usual work, the burden of going forward shifts to the defendant to show that there are other specific jobs which exist in the national economy that plaintiff can perform. *Walden v. Schweiker, supra; Poe v. Harris*, 644 F. 2d 721 (8th Cir. 1981); *Wilkinson v. Schweiker*, 640 F. 2d 743 (5th Cir. 1981); *Wilson v. Califano*, 617 F. 2d 1050 (4th Cir. 1980); *Strickland v. Harris, supra; Rossi v. Califano*, 602 F. 2d 55 (3d Cir. 1979); *Johnson v. Harris, supra; Taylor v. Weinberger*, 512 F. 2d 664 (4th Cir. 1975); *Stark v. Weinberger*, 497 F. 2d 1092 (7th Cir. 1974); *Hernandez v. Weinberger*, 493 F. 2d 1120 (1st Cir. 1974).

The record reveals that prior to his injury, plaintiff was employed as a loader for Beauty Maid Mills. The medical evidence clearly established that he was unable to perform heavy manual labor due to malnourishment and atrophy of muscles, bones and joints directly resulting from the billiary fistula which formed at the wound site. In fact the medical evidence reveals that plaintiff was continuously unable to engage in *any* substantially gainful ac-

tivity for considerably longer than the minimum 12 month period required by law.

Thus we find that the Court of Appeals correctly held that plaintiff, through his medical evidence, established *prima facie* that he was disabled and could not engage in any substantial gainful employment. The burden of going forward then shifted to defendant. However, defendant offered no substantial evidence to the contrary, and therefore failed to rebut plaintiff's *prima facie* showing of disability.

V

[5] The Court of Appeals also found error in Judge Farmer's conclusion of law #2, which reads as follows:

2. Under applicable law and regulations, the Petitioner was required to establish his disability through clinical findings and other objective, probative evidence; and opinions of physicians concerning disability may be considered only to the extent that they are supported by specific and complete clinical findings.

It was the opinion of the Court of Appeals that a Medicaid disability benefits claimant could meet his initial burden, and disability could be "medically determined" for purposes of the Social Security Act, even though the physician's opinion was not supported by objective clinical findings.

Although support for the Court of Appeals' position can be found in the decisions of a number of the federal circuits, we feel that further clarification is necessary to place both those decisions and that of the Court of Appeals' into proper perspective.

The pertinent section of the Social Security Act defining disability, 42 U.S.C. § 1382c(a)(3)(C), states:

"For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques*." (Emphasis added.)

The regulations promulgated under the Act also indicate that:

"Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR § 416.926(b).

In interpreting an earlier version of the regulations it was said that "the weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments." *Allen v. Weinberger, supra,* at 785; *Giddings v. Richardson,* 480 F. 2d 652, 656 (6th Cir. 1973).

Given the plainly expressed requirements of both the Act and the regulations thereunder, we hold that medical reports and opinions, unsupported by any medically acceptable clinical or laboratory diagnostic data or findings, are insufficient to establish disability under the Act. *Oldham v. Schweiker, supra,* at 1084; *Laffoon v. Califano,* 558 F. 2d 253, 256 (5th Cir. 1977); *Kirkland v. Weinberger,* 480 F. 2d 46, 49 (5th Cir.), *cert. denied,* 414 U.S. 913 (1973); *Sykes v. Finch,* 443 F. 2d 192 (7th Cir. 1971). *See also, Valentine v. Richardson,* 468 F. 2d 588 (10th Cir. 1972).

A beneficial illustration of our holding is found in *Laffoon v. Califano, supra.* In that case, one of the doctors who had treated the plaintiff, Mrs. Laffoon, wrote a letter dated 10 June 1974 which opened with the statement that he had not examined plaintiff since 8 October 1970. The remainder of the letter read: "[H]owever, I treated her from 1958 until 1970 for chronic, obstructive lung disease. She was treated regularly for elevated temperature, coughing and wheezing badly. I feel that she is totally disabled." 558 F. 2d at 256. The court in that instance held that such an unsupported medical report could properly be discounted by the trier of fact. *Id.*

Our holding is not in conflict with the many decisions that hold that for purposes of the Act a medical opinion need not be supported by "objective clinical findings." *Brand v. Secretary of the Dept. of Health, Education and Welfare,* 623 F. 2d 523 (8th Cir. 1980); *Rossi v. Califano, supra; Cutler v. Weinberger,* 516 F. 2d 1282 (2d Cir. 1975); *Stark v. Weinberger, supra. Moore v. Finch,* 418 F. 2d 1224 (4th Cir. 1969), states "[O]bjective evidence is not an indispensable type of proof in evaluation of disability . . . the Act demands only that the infirmity be 'demonstrable by

medically acceptable clinical and laboratory diagnostic techniques.' Objective evidence is not named as a requisite." *Id.* at 1226.

Another decision holding that "objective clinical findings" are not required elaborated: "The Act does require that the impairment be 'demonstrable by medically acceptable clinical and laboratory techniques.' However, a headache, backache or sprain may constitute a disabling impairment even though it may not be corroborated by an x-ray or some other *objective* finding." (Emphasis original.) *Brand*, 623 F. 2d at 526.

20 CFR § 416.913 deals with medical evidence of impairment. 20 CFR § 416.913(b), *Medical Reports*, states:

Medical reports should include—

(1) Medical history;

(2) Clinical findings (such as the results of physical or mental status examinations);

(3) Laboratory findings (such as blood pressure, x-rays);

(4) Diagnosis (statement of disease or injury based on its signs and symptoms);

(5) Treatment prescribed with response; and prognosis; and

(6) Medical assessment (except in statutory blindness claims).

20 CFR § 416.928 covers symptoms, signs, and laboratory findings as follows:

Medical findings consist of symptoms, signs, and laboratory findings:

(a) *Symptoms* are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.

(b) *Signs* are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena which indicated specific abnormalities of behavior, affect, thought, memory, orienta-

tion and contact with reality. They must also be shown by observable facts that can be medically described and evaluated.

(c) *Laboratory findings* are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

It is apparent that the decisions holding that medical opinions need not be supported by "objective clinical findings" are equating these findings with "laboratory findings." Clearly the Act and regulations do not require "objective clinical findings" if that phrase is interpreted to mean x-rays and other objective tests. Indeed, it is obvious that some disabilities recognized as disabling under the Act such as chronic pain cannot be established by objective tests and in those circumstances a medical diagnosis must necessarily rely on a patient's history and subjective complaints. *Brand v. Secretary of Dept. of H.E.W., supra.* However, it is equally clear that under the Act disability must be established by acceptable medical evidence, that which is supported by complete and specific clinical findings, and that a conclusory medical opinion devoid of such will not suffice. In the case at bar, the medical reports of plaintiff's physicians, Dr. Meredith and Dr. Chatham, are amply supported by complete and specific clinical and laboratory findings. Their opinions, thus supported, lead unequivocally to the conclusion that plaintiff was totally disabled for a period in excess of 12 months.

## VI

We conclude that the Court of Appeals correctly reversed the trial court's order affirming defendant's denial of disability benefits.

Plaintiff, by medically acceptable evidence, supported by the requisite clinical and laboratory findings, established that his injury rendered him totally disabled as defined by 42 U.S.C. 1382c(c)(3)(A). Defendant produced no substantial evidence to contradict plaintiff's evidence and support its denial of benefits.

Further, plaintiff, through his medical evidence established *prima facie* that his disability prevented him from engaging in any substantial gainful employment for a period not less than 12 months. Defendant failed to go forward with evidence that plaintiff, given his age, education and work experience, had the capacity to perform specific jobs existing in the national economy, thus leaving plaintiff's evidence unrebutted.

The decision of the Court of Appeals reversing the judgment of the Superior Court and remanding the cause to that court for entry of judgment reversing the decision of defendant denying benefits, and ordering defendant to approve and allow plaintiff's claim, is

Modified and affirmed.