Correll v. Boulware

HOWARD L. (DANNY) CORRELL, JR., CENTURY 21 BOXWOOD REALTY, PETITIONER v. SENORA L. BOULWARE, COMPLAINANT, AND NORTH CARO-LINA REAL ESTATE LICENSING BOARD

No. 8410SC695

(Filed 21 May 1985)

1. **Brokers and Factors § 8— real estate broker — suspension of license — secretly acting for more than one party — dishonest dealing**

   Findings that the owners of realty had listed their property with peti-tioner real estate broker for sale and that petitioner made a secret profit of $8,000 by purchasing the property and reselling it to a third party without disclosing his purchase price to the purchaser and without disclosing his sell-ing price to the sellers supported conclusions by the Real Estate Licensing Board that petitioner was guilty of acting for more than one party in a trans-action without the knowledge of all parties for whom he acted in violation of G.S. 93A-6(a)(4) and of conduct constituting improper, fraudulent or dishonest dealing in violation of G.S. 93A-6(a)(10).

2. **Brokers and Factors § 8— real estate broker — suspension of license — unworthy or incompetent to safeguard public interest**

   Findings that petitioner real estate broker made a secret profit of $8,000 by buying a listed home with a bank loan and reselling it to a third party, that although petitioner received $18,720.44 from the third party he only paid $10,858.72 of these funds to the bank on his loan, and that the third party sus-tained the loss of money and her home supported a conclusion by the Real Estate Licensing Board that petitioner was guilty of "being unworthy or in-competent to act as a real estate broker or salesman in such manner as to safeguard the interest of the public" in violation of G.S. 93A-6(a)(8).

3. **Brokers and Factors § 8— real estate license — revocation for being unworthy or incompetent to safeguard public interest — constitutionality**

   The statute permitting the revocation or suspension of the real estate license of a licensee found guilty of "being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interest of the public," G.S. 93A-6(a)(8), is not unconstitutionally vague.

APPEAL by petitioner, Howard L. Correll, Jr., from *Lee, Judge.* Judgment entered 30 April 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 13 February 1985.

Petitioner, Howard L. Correll, Jr., appeals from the suspen-sion of his real estate license by the North Carolina Real Estate Licensing Board (hereinafter "Board"). In suspending petitioner's license, the Board made the following findings of fact following a hearing on 15 October 1982 upon proper notice:

(1) Howard L. (Danny) Correll, Jr., is, and was at all times material to this proceeding, licensed by the Board as a real estate broker, holding license number 45996, and received due and proper notice of this hearing.

(2) On November 27, 1978, Mr. and Mrs. Floyd Rickard listed their house and six acres of land on Daniels Road near Mocksville, North Carolina, with Respondent's firm with Respondent as agent. The listing price was $47,500.

(3) On May 28, 1979, Mrs. Senora L. Boulware offered to purchase the Rickards' property for $42,000, subject to obtaining conventional or Federal Land Bank financing. Mrs. Boulware's offer was prepared by Ms. Sheila Oliver, an agent of Boxwood Realty.

(4) Shortly thereafter, Respondent presented Mrs. Boulware's offer to the Rickards, who accepted the offer on May 29, 1979.

(5) The Boulware-Rickard contract did not result in a sale because Mrs. Boulware was unable to secure the financing required under the contract.

(6) The Rickards were anxious to sell their property so that they could purchase another house. Respondent was aware of this.

(7) Despite her inability to obtain financing, Mrs. Boulware still desired to purchase the Rickards' property, and requested Respondent to assist her in searching for alternative ways to acquire the property.

(8) Respondent presented the Rickards an offer from his firm, Boxwood Real Estate (hereinafter referred to "Boxwood") to purchase the property for $34,000. Respondent owns and controls Boxwood. Respondent explained to the Rickards that he could not afford to pay more as he felt it was necessary for him to make two or three times his normal commission when he resold the property. The Rickards accepted this offer.

(9) The Rickards knew that Respondent intended to sell the property to Mrs. Boulware for a profit, but he never disclosed his selling price to them.

Correll v. Boulware

(10) Respondent, acting for Boxwood, purchased the Rickards' property on or about July 5, 1979. On that same day, Boxwood also borrowed $34,000 from Branch Banking and Trust Company. Boxwood executed a deed of trust to Branch Banking and Trust to secure the loan. The loan, principal and interest, was to be paid within six months. Respondent did not disclose to Branch Banking and Trust Company his intent to sell the property to Mrs. Boulware.

EXCEPTION #1

(11) On or about July 11, 1979, Respondent entered into an installment land contract with Mrs. Boulware. Under the terms of this contract, Boxwood promised to sell the former Rickards property to Mrs. Boulware for $44,000. Mrs. Boulware paid $10,000 down and was obligated to pay the balance over twenty years at 12% interest per annum. When the full price, plus interest, was paid, Boxwood would deed the property to Mrs. Boulware. She took possession of the property at once. This contract was recorded on July 26, 1979.

(12) Respondent did not disclose to Mrs. Boulware what he had paid the Rickards for the property, nor did he discuss with her the possibility that she might purchase the property herself for much less than her original offer.

EXCEPTION #2

(13) Mrs. Boulware was unfamiliar with real estate transactions. She thought Respondent was acting in the capacity of a real estate agent and placed her trust in him. Mrs. Boulware believed that Respondent was purchasing the property only to facilitate her purchase of the property, and that the Rickards were the real sellers.

EXCEPTION #3

(14) Mrs. Boulware knew that Respondent had borrowed money in order to purchase the property, but she did not know that he had used the property to secure Boxwood's indebtedness, nor was she aware of the significance of this.

EXCEPTION #4

(15) After he paid Ms. Oliver $1,000 for her services and other closing expenses, Respondent and Boxwood made a secret profit in excess of $8,000 as a result of the two transactions.

EXCEPTION #5

(16) Mrs. Boulware's payment history was poor. Her payments to Boxwood were often tardy, and on several occasions her checks had to be presented twice.

(17) The history of Respondent's payments to Branch Banking and Trust Company was also poor. His short term note was restructured several times between January, 1980 and October, 1981. Respondent did not make his payments in a timely fashion. Although he received a total of $18,720.44 from Mrs. Boulware toward her obligation under the installment land contract, Respondent only paid Branch Banking and Trust Company $10,858.72.

(18) On October 27, 1981, Boxwood began foreclosure proceedings against Mrs. Boulware for her late payments and failure to maintain the property as required by the installment land contract. Boxwood's foreclosure was temporarily halted when Mrs. Boulware filed for personal bankruptcy.

(19) On October 24, 1981, Boxwood's note with Branch Banking and Trust Company became due and payable. The bank was aware that Boxwood and Respondent were in poor financial condition and decided not to renew Boxwood's loan. When Respondent could not satisfy Boxwood's obligation under the note, Branch Banking and Trust Company foreclosed on the property on November 20, 1981.

(20) The property was sold in foreclosure for $22,000. There was a deficiency in the principal amount of $12,000. Mrs. Boulware received nothing from the proceeds of the sale and was forced to move.

Based upon the foregoing findings of fact, the Board concluded that petitioner was guilty of violating G.S. 93A-6(a)(4) (1981) ("[a]cting for more than one party in a transaction without the knowledge of all parties for whom he acts"), G.S. 93A-6(a)(8) (1981) ("[b]eing unworthy or incompetent to act as a real estate broker

or salesman in such manner as to safeguard the interests of the public"), and G.S. 93A-6(a)(10) (1981) ("[a]ny other conduct whether of the same or a different character from that hereinbefore specified which constitutes improper, fraudulent or dishonest dealing").[1] The Board suspended petitioner's real estate license for a period of six months and placed him on probation for a period of two years. Pursuant to Chapter 150A of the General Statutes, petitioner filed a petition for judicial review of the Board's order in Wake County Superior Court. Following a review of the administrative record, the Wake County Superior Court ruled that the Board's findings of fact were supported by substantial evidence and that the Board's conclusions of law were not affected by any error of law. Petitioner appeals.

*Henry P. Van Hoy, II, for petitioner appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Harry H. Harkins, Jr., and Thomas R. Miller, Deputy Legal Counsel, North Carolina Real Estate Commission, for respondent North Carolina Real Estate Licensing Board.*

JOHNSON, Judge.

Petitioner has excepted to several of the Board's findings of fact. He contends that these findings are not supported by substantial evidence in view of the entire record, and are arbitrary and capricious.

In reviewing the sufficiency of a board's findings of fact, the reviewing court must examine the "whole record" to determine if there is substantial evidence in the record to support the board's findings. *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). Substantial evidence to support a finding is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Lackey v. Department of Human Resources,* 306 N.C. 231, 293 S.E. 2d 171 (1982). It is more than a scintilla or a permissible inference. *Id.* The whole record test does not allow a reviewing court to replace the board's judgment between two reasonably conflicting views, although the court could

---

1. G.S. 93A-6 was rewritten, effective 1 September 1983. 1983 Sess. Laws, c. 81, s. 13. Since the hearing and alleged violations occurred prior to 1 September 1983, the former version of G.S. 93A-6 applies to this case.

have justifiably reached a different result had the matter been before it *de novo. Thompson v. Board of Education, supra.* In applying the whole record test, the court must take into account evidence in the record which conflicts with or detracts from the board's decision. *Id.*

With these principles in mind, we examine petitioner's exceptions to the findings of fact. Petitioner conceded at the hearing that he did not tell Mrs. Boulware what he paid for the property, or that he was making a $10,000 profit on the deal, but he did tell her that he would have to have two to three times his normal commission "to take the risk." There is no evidence in the record that Mrs. Boulware knew what petitioner's normal commission was. She was not a party to the listing contract between Boxwood and the Rickards. Indeed, the evidence tends to show, as the Board found, that Mrs. Boulware was unfamiliar with real estate transactions. Mrs. Boulware did not know the difference between an installment land contract and a mortgage, she did not know what a closing or settlement statement was, and seemed to be unfamiliar with normal closing procedures. Although Mrs. Boulware had a college education, and had purchased a home before, the situation in the present case was unusual.

Petitioner also testified that the Rickards had an offer from their neighbors to purchase the property for $38,000, but that they wanted to sell to anyone but their neighbors, with whom they were having a dispute. Petitioner also testified that the Rickards were anxious to sell and move into another home. They were willing to sell for less than $38,000, as demonstrated by the sale of the property to petitioner for only $34,000. Petitioner did not tell the Rickards that he was selling the property for $44,000. He did not think he had a duty to tell the Rickards or Mrs. Boulware his selling and purchase price.

Mrs. Boulware testified that she did not know that petitioner was making a $10,000 profit on the transaction and that she had asked him to reduce the price. Despite her request to reduce the price and to help her purchase the property, there is no evidence that petitioner ever told her she could purchase the property for less. Mrs. Boulware also testified that she believed petitioner purchased the property to enable her to purchase the property and that she thought the Rickards were the sellers.

Based upon the foregoing, we hold the Board's findings of fact that petitioner did not disclose to Mrs. Boulware the amount he paid for the property or that she might be able to purchase the property for less than her original offer, that Mrs. Boulware was unfamiliar with real estate transactions, that Mrs. Boulware believed petitioner was purchasing the property to facilitate her purchase of the property and that the Rickards were the true sellers and that Petitioner and Boxwood made a secret profit of $8,000 were supported by substantial evidence and were not arbitrary and capricious.

Petitioner also excepts to the findings that petitioner failed to disclose to the bank his intent to sell the property to Mrs. Boulware and that Mrs. Boulware did not know the property had been pledged in a deed of trust as security for petitioner's borrowing of the purchase price. Even if it is assumed for the sake of argument that these findings are not supported by substantial evidence, the remaining findings support the court's judgment. *See Wachovia Bank & Trust Co. v. Bounous*, 53 N.C. App. 700, 281 S.E. 2d 712 (1981). G.S. 93A-6 allows the Real Estate Licensing Board to revoke or suspend a salesman's or broker's license for any one of several listed misdeeds. Only one violation of one section is needed to revoke or suspend one's license; one act may constitute a violation of more than one section of G.S. 93A-6. *Edwards v. Latham*, 60 N.C. App. 759, 299 S.E. 2d 819 (1983).

We now determine whether these findings support the court's conclusions, and whether these conclusions were affected by error of law or were arbitrary and capricious.

"A real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains." *State v. Warren*, 252 N.C. 690, 695, 114 S.E. 2d 660, 665 (1960). To protect the public from unscrupulous and dishonest real estate salesmen and brokers, the General Assembly enacted the Real Estate Law (Chapter 93A of the General Statutes) and established the Real Estate Licensing Board to license brokers and salesmen, "with due regard to the paramount interests of the public as to the honesty, truthfulness, integrity and competency of the applicant." G.S. 93A-4(b).

The general rule is that a broker can neither purchase from, nor sell to, his principal unless the principal expressly assents or acquiesces with full knowledge of all the facts and circumstances. *Real Estate Licensing Board v. Gallman*, 52 N.C. App. 118, 124, 277 S.E. 2d 853, 856 (1981). In *Gallman*, the seller listed property for sale with the agent for an asking price of $15,000. The seller subsequently gave the agent an option to purchase the property for $11,000. A third party subsequently made an offer to the agent to purchase the property for $15,000, after the agent had falsely represented to the third party that the owner-seller had an offer to purchase the property for $14,500. The agent did not disclose to the third party that he had an option to purchase the property for $11,000 nor did he disclose to the seller that he had an offer to purchase the property for $15,000. The agent purchased the property for $11,000 and then sold it to the third party for $15,000, thereby making a secret profit of $4,000. We upheld conclusions that the agent's actions constituted violations of G.S. 93A-6(a)(1) (making misrepresentations) and G.S. 93A-6(a)(4) (acting for more than one party without the knowledge of all). We observed with regard to the secret profit that "(t)he licensing act should not be interpreted to require a licensee to be honest as a broker or salesman while allowing him to be dishonest as an owner." *Id.* at 125, 277 S.E. 2d at 857.

[1] In the present case, the findings show that petitioner made a secret profit of $8,000, after the payment of expenses, by failing to disclose to Mrs. Boulware his purchase price of the property and by failing to disclose to the Rickards his selling price. By his concealments, petitioner made the illicit gains the Act was designed to prevent or regulate. We hold these findings support a conclusion that petitioner violated G.S. 93A-6(a)(4) and G.S. 93A-6(a)(10).

[2] We also hold the Board's findings support a conclusion that petitioner violated G.S. 93A-6(a)(8) ("[b]eing unworthy or incompetent to act as a real estate broker or salesman in such a manner as to safeguard the interest of the public"). In *Parrish v. Real Estate Licensing Board*, 41 N.C. App. 102, 254 S.E. 2d 268 (1979), we observed that "incompetency" is defined in Black's Law Dictionary (4th ed. 1957) as: "Lack of ability, legal qualification, or fitness to discharge the required duty," and that "unworthy", is defined as: "Unbecoming, discreditable, not having suitable

qualities or value." Petitioner's actions can hardly be called becoming or a credit to the real estate profession. Not only did petitioner make a secret profit by his concealments, the findings of fact show that he received $18,720.44 from Mrs. Boulware but only paid $10,858.72 of those funds to the bank on his loan. Unlike the complainant in *Parrish, supra*, Mrs. Boulware sustained the loss of money and her home.

[3]   Petitioner contends that G.S. 93A-6(a)(8) is unconstitutionally vague and lacks the necessary explicitness to put reasonable persons on notice as to the conduct proscribed. We disagree. We do not think the section is so vague that "men of common intelligence must guess at its meaning." *In re Hawkins*, 17 N.C. App. 378, 394, 194 S.E. 2d 540, 550, *cert. denied*, 283 N.C. 393, 196 S.E. 2d 275, *cert. denied*, 414 U.S. 1001, 38 L.Ed. 2d 237, 94 S.Ct. 355 (1973), *quoting from Coates v. Cincinnati*, 402 U.S. 611, 614, 29 L.Ed. 2d 214, 217, 91 S.Ct. 1686, 1688 (1971).

For the foregoing reasons, we find the Board's decision to be supported by substantial evidence, to be unaffected by error of law, and not to be arbitrary or capricious. The judgment of the superior court affirming the decision of the Board is

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.