DAVIS, Judge.
 

 *183
 
 This appeal requires us to address the analysis that must be undertaken in evaluating a claimant's application for Medicaid disability benefits. Sue Mills ("Petitioner") appeals from the trial court's order affirming a determination by the North Carolina Department of Health and Human Services ("DHHS") that she was not disabled and, therefore, not entitled to such benefits. After careful review, we vacate the trial court's order and direct the court to remand this case to DHHS for further proceedings consistent with this opinion.
 

 Factual Background
 

 Petitioner is a 54-year-old woman who has a history of illnesses and symptoms that began in the 1990s. During her thirties, she was employed as a housekeeper, resulting in "some deterioration" in her lower back. During her early forties, her lower back pain worsened, and she experienced anxiety, nerves, and depression. By the time she turned fifty, Petitioner was suffering from migraine headaches, continued anxiety and depression, pain in her lower back, problems using her hands, strain on her neck and shoulders, weakness in her legs, and a variety of other health-related issues.
 

 Petitioner applied to the Social Security Administration ("SSA") for Social Security disability benefits in 2013. An administrative law judge (the "ALJ") conducted a disability hearing, and on 24 October 2013, the ALJ issued a decision (the "Social Security Decision") determining that Petitioner was not disabled. Petitioner appealed the Social Security Decision, and her appeal is currently pending in federal court.
 

 Approximately eight months after the Social Security Decision was issued, Petitioner applied to the Haywood County Department of Social Services (the "DSS") for Medicaid disability benefits. On 23 July 2014, her application
 
 *568
 
 was denied. Petitioner appealed the decision to DHHS, and a hearing was held before State Hearing Officer Linda Eckert (the "SHO") on 8 October 2014.
 

 On 16 October 2014, the SHO issued a Notice of Decision (the "Agency Decision"), which determined that: (1) Petitioner was 51 years of age and had obtained a GED; (2) she was not presently working and had not worked since May 2014; (3) Petitioner had no "relevant past
 
 *184
 
 work"; (4) she had "a medical history of chronic pain, degenerative disc disease, thoracic compression fracture, vitamin D deficiency, chronic obstructive pulmonary disease, migraine headaches, esophageal reflux, hyperlipidemia, lumbar radiculopathy, lumbar spondylosis, osteopenia, varicose veins, carpal tunnel syndrome, [and] anxiety and depression"; and (5) "[b]y May 2015, the [Petitioner] will retain the ability to engage in light work...."
 

 The SHO then summarized Petitioner's medical history and made the following pertinent findings of fact:
 

 6. In an October 2013 decision, the [SSA] Administrative Law Judge opined that the Appellant has the residual functional capacity to perform light work with occasional posturals; no climbing of ladders, ropes or scaffolds; frequent bilateral fingering; and avoidance of concentrated exposure to hazards. Appellant was also limited to simple, routine, repetitive work with occasional public contact. This opinion is given great weight as it is consistent with and supported by the objective evidence.
 

 7. The Appellant's medically determinable impairments are at least theoretically capable of producing at least some of the general subjective symptoms alleged by the Appellant. However, the Appellant's testimony as to the specific intensity, persistence, and limiting effects of the pain and other subjective symptoms is not persuasive in view of the inconsistencies with the medical evidence. For example, the Appellant testified she experiences migraine headaches twice a month which are at a pain level of 20/10; however, the medical evidence does not reflect that the Appellant reported to the treating or examining physicians that she experiences such extreme symptoms. It is not credible that the Appellant could experience such extreme symptoms but fail to report them to the treating physicians.
 

 Based on these findings of fact, the SHO made the following conclusions:
 

 1. Appellant is not engaging in Substantial Gainful Activity as defined in 20 CFR 416.910.
 

 2. Appellant's impairments of chronic pain, degenerative disc disease, vitamin D deficiency, chronic obstructive
 
 *185
 
 pulmonary disease, migraine headaches, esophageal reflux, hyperlipidemia, lumbar radiculopathy, lumbar spondylosis, osteopenia, varicose veins, carpal tunnel syndrome, anxiety and depression are severe but do not meet or equal the level of severity specific in 20CFR [sic] Part 404, Appendix 1 to Subpart P (Listing of Impairments). Appellant's impairment of thoracic compression fracture is currently at a disabling severity, but is not expected to meet the duration requirement of remaining at a disabling severity for a period of twelve continuous months as specified in 20 CFR 416.909.
 

 3. Considering the combination of all impairments and related symptoms, by May 2015 the Appellant will have the residual functional capacity ... to engage in light work with occasional stooping and crouching; no climbing of ladders, ropes or scaffolds; frequent but not constant fingering; avoidance of concentrated exposure to heights and hazards; avoidance of concentrated exposure to dust and fumes; and to work that is low stress, nonproduction in nature and does not require extensive interaction with the general public. The effects of pain have been evaluated under 20 C.F.R. 404.1529 and Fourth Circuit law as set forth in Hyatt v. Sullivan,
 
 899 F.2d 329
 
 (4th Cir. 1990) [.]
 

 4. The Appellant's non-exertional limitations of occasional stooping and crouching; no climbing of ladders, ropes and scaffolds; frequent but not constant fingering; avoidance of concentrated exposure to heights and hazards; avoidance of concentrated exposure to dust and fumes; and to work that is low stress, nonproduction in nature
 
 *569
 
 and does not require extensive interaction with the general public do not significantly reduce the occupational base of light work available in the economy.... Considering the Appellant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy as specified in 20 CFR 416.966 that the Appellant can perform as Vocational Rule 202.13 being used as a framework directs a finding of "not disabled"....
 

 5. Appellant does not meet the disability requirement specified in 20 CFR 416.920(g) and therefore is not found disabled or eligible for Medicaid.
 

 *186
 
 As a result of these findings and conclusions, the SHO determined that the DSS had properly denied Petitioner's application for disability benefits. The Agency Decision became final on 16 October 2014 pursuant to N.C. Gen. Stat. § 108A-79(b).
 

 On 19 November 2014, Petitioner filed a petition for judicial review in Haywood County Superior Court pursuant to N.C. Gen. Stat. § 108A-79(k). On 19 December 2014, DHHS filed a response along with a motion to dismiss the petition. Petitioner filed an amended petition on 29 July 2015.
 

 On 2 November 2015, a hearing was held before the Honorable Bradley B. Letts. The trial court entered an order on 4 January 2016 containing the following findings of fact:
 

 1. The issue before the administrative agency was whether petitioner qualified for Medicaid for the Disabled.
 

 2. [DHHS] applied the Supplemental Security Income Standard found in the Social Security Act in order to determine whether Petitioner was qualified for Medicaid for the Disabled.
 

 3. [DHHS] reviewed and analyzed the medical records contained in the official record before making its final decision. Petitioner has several chronic medical conditions, some of which [DHHS] recognized as severe.
 

 4. [DHHS] reviewed and gave some weight to the functional capacity test result reported in the Social Security Administration Office of Disability Adjudication and Review decision of October 24, 2013. This decision found Petitioner was not under a disability and had the ability to work.
 

 5. Based on evidence in the record, [DHHS] determined that Petitioner did not qualify for Medicaid for the Disabled.
 

 6. This Court was informed in open court that Petitioner would not present additional testimony at the judicial review hearing.
 

 7. Petitioner's additional evidence consists of medical records of physician appointments that Petitioner attended after her hearing before [DHHS]'s Hearing
 
 *187
 
 Officer. These medical records contain the same or similar review of systems, assessments, diagnosis and/or prognosis as the medical records contained in the official record. As such, this additional evidence is merely cumulative of the medical records contained in the official record.
 

 8. Petitioner has not established that any evidence presented to the hearing officer at the time of the hearing had been excluded.
 

 The court then made the following conclusions of law:
 

 1. This matter is properly before this court pursuant to N.C. Gen. Stat. § 108A-79(k).
 

 2. North Carolina Medicaid for the Disabled qualification standards are found in the federal Social Security Act. N.C. Gen. Stat. § 108A-56.
 

 3. This Court's standard of review for questions of law are
 
 de novo
 
 . The standard of review where petitioner has alleged the final decision was arbitrary, capricious, or unsupported by substantial evidence is the whole record standard of review. N.C. Gen. Stat. § 150B-51.
 

 4. [DHHS] correctly applied the five step sequential evaluation in its assessment of Petitioner's application for Medicaid for the Disabled. 20 CFR Part 416
 
 et seq.
 

 5. Substantial evidence exist[ing] in the official record show[s] that while some of Petitioner's illnesses are chronic and severe, a review of Petitioner's medical, social, vocational, and functional capacity evidence does not establish that she qualifies for Medicaid for the Disabled. [DHHS]'s
 
 *570
 
 determination of such does not indicate a lack of careful consideration.
 

 6. A matter may be remanded back to the administrative agency if additional evidence is presented to the judicial review court that is material to the issues, not merely cumulative, and could not reasonably have been presented at the administrative hearing. In this matter the additional evidence was merely cumulative. Thus, remand to the agency for review of those records is not required. N.C. Gen. Stat. § 150B-49.
 

 *188
 
 7. The hearing officer did not exclude any evidence presented by Petitioner at the hearing. N.C. Gen. Stat. § 108A-79(k).
 

 Based on these findings and conclusions, the trial court affirmed the Agency Decision. Petitioner filed written notice of appeal on 2 February 2016.
 

 Analysis
 

 I. Standard of Review
 

 Chapter 108A of the North Carolina General Statutes provides a claimant with the right to appeal an initial decision by a local department of social services denying her application for Medicaid disability benefits.
 
 See
 
 N.C. Gen. Stat. § 108A-79(a) (2015). Pursuant to the statute, the director (or the director's designated representative) is required to forward the claimant's request for an appeal to DHHS, which must then designate a hearing officer to conduct a
 
 de novo
 
 administrative hearing in accordance with Chapter 150B of the North Carolina General Statutes.
 
 See
 
 N.C. Gen. Stat. § 108A-79(d). If the claimant is dissatisfied with DHHS's final decision upon the agency's review of her claim, she may file a petition for judicial review in the superior court of the county in which the claim arose. N.C. Gen. Stat. § 108A-79(k).
 

 Chapter 150B of the North Carolina General Statutes provides, in pertinent part, as follows:
 

 The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 
 *189
 
 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C. Gen. Stat. § 150B-51(b) (2015).
 

 "The standard of review for an appellate court upon an appeal from an order of the superior court affirming or reversing an administrative agency decision is the same standard of review as that employed by the superior court."
 
 Dorsey v. UNC-Wilmington
 
 ,
 
 122 N.C.App. 58
 
 , 62-63,
 
 468 S.E.2d 557
 
 , 560 (1996) (citation omitted). In reviewing an agency decision, this Court applies the "whole record" test.
 
 Fehrenbacher v. City of Durham
 
 ,
 
 239 N.C.App. 141
 
 , 146,
 
 768 S.E.2d 186
 
 , 191 (2015) (citation omitted). "The whole record test requires the reviewing court to examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence."
 

 Id.
 

 (citation and quotation marks omitted). This "test does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it
 
 de novo
 
 ."
 

 Id.
 

 (citation and quotation marks omitted).
 

 II. Medicaid Disability Benefits
 

 Medicaid, established by Congressional enactment of Title XIX of the Social Security Act,
 
 42 U.S.C. § 1396
 

 et seq.
 
 , is a cooperative federal-state program providing medical assistance and other services to certain classes of needy persons. States which adopt the program and administer it in conformity with federal laws and regulations receive federal funds which defray a substantial portion of the program costs. Participation by a state in the Medicaid
 
 *571
 
 program is entirely optional. However, once an election is made to participate, the state must comply with the requirements of federal law. North Carolina adopted the Medicaid program through the enactment of Part 5, Article 2, Chapter 108 of the General Statutes, amended and recodified effective 1 October 1981 at Part 6, Article 2, Chapter 108A.
 

 Lackey v. N.C. Dep't of Human Resources
 
 ,
 
 306 N.C. 231
 
 , 235,
 
 293 S.E.2d 171
 
 , 175 (1982) (internal citations omitted).
 
 [1]
 

 *190
 
 In order to qualify for both Medicaid and Social Security disability benefits, a claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2012).
 

 [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
 

 42 U.S.C. § 1382c(a)(3)(B).
 

 The following five-step sequential evaluation process is used to determine whether a claimant is disabled:
 

 If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity.... We use this residual functional capacity assessment at both step four and at step five when we evaluate your claim at these steps. These are the five steps we follow:
 

 (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
 

 *191
 
 (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
 

 (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled....
 

 (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
 

 (v) At the fifth and last step, we consider our assessment of your residual
 
 *572
 
 functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....
 

 20 C.F.R. § 416.920
 
 (a)(4) (2016).
 

 This Court has previously summarized this evaluation process as follows:
 

 (1) Is the individual engaged in substantial gainful activity? (2) If not, does the individual suffer from a severe impairment, i.e., an impairment that significantly limits his ability to engage in the basic work activities outlined in 20 C.F.R. Sec. 416.921 ? (3) Assuming the individual meets this threshold severity requirement, is the impairment so severe as to render the individual disabled without inquiry into vocational factors such as age, education, and work experience, i.e., does the impairment meet or equal those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ? (4) If the severe impairment does not meet or equal those listed
 
 *192
 
 in Appendix 1, does it prevent the individual from doing past relevant work in light of his "residual functional capacity?" and, (5) If the severe impairment does prevent the individual from doing past relevant work, can the individual do other work, given his age, education, residual functional capacity, and past work experience?
 

 Lowe v. N.C. Dep't of Human Resources
 
 ,
 
 72 N.C.App. 44
 
 , 48,
 
 323 S.E.2d 454
 
 , 457 (1984).
 

 "If the first three steps do not lead to a conclusive determination, the ALJ then [moves on to Step 4 to] assess[ ] the claimant's residual functional capacity, which is the most the claimant can still do despite physical and mental limitations that affect her ability to work."
 
 Mascio v. Colvin
 
 ,
 
 780 F.3d 632
 
 , 635 (4th Cir. 2015) (citation and quotation marks omitted). Once the claimant meets either Step 3 or Step 4, "[t]he burden then shifts to the agency to show that the claimant can perform alternative work existing in the national economy under [Step 5]."
 
 Henderson
 
 , 91 N.C.App. at 533, 372 S.E.2d at 891 ;
 
 see also
 

 Mascio
 
 ,
 
 780 F.3d at 635
 
 .
 

 "[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the [agency's] ruling."
 
 Radford v. Colvin
 
 ,
 
 734 F.3d 288
 
 , 295 (4th Cir. 2013) (citation omitted). This record "should include a discussion of which evidence the [agency] found credible and why, and specific application of the pertinent legal requirements to the record evidence."
 

 Id.
 

 (citation omitted). The agency's decision must "include a narrative discussion describing how the evidence supports each conclusion[.]"
 
 Monroe v. Colvin
 
 ,
 
 826 F.3d 176
 
 , 190 (4th Cir. 2016) (citation and quotation marks omitted). Moreover, the decision must "build an accurate and logical bridge from the evidence to [its] conclusion."
 

 Id.
 

 at 189
 
 .
 

 In the present case, Petitioner contends that the SHO did not provide any "meaningful explanation" in how it reached its conclusion. Specifically, Petitioner argues that the Agency Decision lacked (1) a "function by function narrative discussion" to explain "how [her] residual functional capacity was established[;]" (2) a "discussion related to [the SHO's] evaluation of the effects of pain[;]" (3) a valid basis for attaching significant weight to the Social Security Decision; and (4) the use of vocational expert testimony to aid the SHO in determining whether Petitioner could find substantial gainful work in the national economy. As discussed more fully below, we agree with Petitioner that the Agency Decision is deficient in several material respects and that this case must be remanded for further proceedings.
 

 *193
 

 A. Function-by-Function Narrative Discussion
 

 Petitioner contends that the SHO was required to conduct a function-by-function narrative discussion to establish her residual functional capacity. We find instructive on this issue the Fourth Circuit's decision in
 
 Mascio
 
 . In that case, an agency decision denying a claimant's application for Social Security benefits determined at Step 4 that the claimant could no longer perform her past work based on her residual functional capacity.
 
 Mascio
 
 ,
 
 780 F.3d at 635-36
 
 . However,
 
 *573
 
 at Step 5 of the evaluation process, the agency determined that the claimant could perform other work and therefore was not disabled.
 

 Id.
 

 at 640
 
 .
 

 On appeal, the claimant argued that during Step 4 of the evaluation process, the ALJ had erred in failing to conduct a function-by-function analysis in determining her residual functional capacity. She asserted that federal SSA regulations required such a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."
 

 Id.
 

 at 636
 
 (citation and quotation marks omitted).
 

 While declining to adopt a
 
 per se
 
 rule that a function-by-function analysis is necessary in every case, the Fourth Circuit held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."
 

 Id.
 

 at 636
 
 (citation, quotation marks, brackets, and ellipsis omitted). The court stated the following:
 

 Here, the ALJ has determined what functions he believes [the claimant] can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions. In particular, although the ALJ concluded that [the claimant] can perform certain functions, he said nothing about [her] ability to perform them for a full workday. The missing analysis is especially troubling because the record contains conflicting evidence as to [the claimant's] residual functional capacity-evidence that the ALJ did not address.
 

 Id.
 

 at 636-37
 
 .
 

 For these reasons, the court observed that it was "left to guess about how the ALJ arrived at his conclusions" regarding the claimant's ability to perform "relevant functions" and that it "remain[ed] uncertain as to what the ALJ intended[.]"
 

 Id.
 

 at 637
 
 . Thus, the court concluded that
 
 *194
 
 remand was necessary to cure these deficiencies in the agency's decision.
 

 Id.
 

 While the facts of the present case are not identical to those in
 
 Mascio
 
 , the Fourth Circuit's opinion nevertheless demonstrates why the SHO's analysis here was inadequate. In conducting what was apparently intended to be Step 4 of the sequential evaluation process,
 
 [2]
 
 the SHO stated as follows:
 

 3. Considering the combination of all impairments and related symptoms, by May 2015 the Appellant will have the residual functional capacity ... to engage in light work with occasional stooping and crouching; no climbing of ladders, ropes or scaffolds; frequent but not constant fingering; avoidance of concentrated exposure to heights and hazards; avoidance of concentrated exposure to dust and fumes; and to work that is low stress, nonproduction in nature and does not require extensive interaction with the general public. The effects of pain have been evaluated under 20 C.F.R. 404.1529 and Fourth Circuit law as set forth in Hyatt v. Sullivan,
 
 899 F.2d 329
 
 (4th Cir. 1990) [.]
 

 In reaching this conclusion, however, the SHO did not explain with any degree of specificity at all the processes it used to conclude that Petitioner was able to engage in light work.
 
 [3]
 
 Thus, we believe that-as in
 
 *574
 

 Mascio
 
 -this is a case where "inadequacies in the [agency]'s analysis
 
 *195
 
 frustrate meaningful review."
 
 See
 

 Mascio
 
 ,
 
 780 F.3d at 636
 
 (citation and quotation marks omitted). Because the Agency Decision lacks the sort of detailed analysis necessary for meaningful appellate review, we direct DHHS on remand to provide a narrative discussion of whether Petitioner's limitations will prevent her from performing the full range of light work.
 

 B. Evaluation of Credibility of Petitioner's Testimony as to Severity of Her Symptoms
 

 Petitioner next argues that the Agency Decision lacks a discussion of how the SHO weighed the credibility of Petitioner's testimony as to the intensity, persistence, and limiting effects of her symptoms. In
 
 Mascio
 
 , the claimant also asserted that the ALJ failed to properly analyze the credibility of her testimony as to the intensity, persistence, and limiting effects of her pain.
 

 Id.
 

 at 639
 
 . The claimant argued that the only grounds set out in the agency decision for rejecting her statements as to her pain were findings that she "(1) had not complied with follow-up mental health treatment; (2) had lied to her doctor about using marijuana; and (3) had been convicted for selling her prescription pain medication."
 

 Id.
 

 The Fourth Circuit found that this lack of analysis as to the claimant's credibility constituted an additional error warranting remand. The court stated that "[n]owhere ... does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity."
 

 Id.
 

 at 640
 
 .
 

 Here, the sole finding of fact in the Agency Decision regarding Petitioner's credibility was the following:
 

 7. The Appellant's medically determinable impairments are at least theoretically capable of producing at least some of the general subjective symptoms alleged by the Appellant. However, the Appellant's testimony as to the specific intensity, persistence, and limiting effects of the pain and other subjective symptoms is not persuasive in view of the inconsistencies with the medical evidence. For example, the Appellant testified she experiences migraine headaches twice a month which are at a pain level of 20/10; however, the medical evidence does not reflect that the Appellant reported to the treating or examining physicians that she experiences such extreme
 
 *196
 
 symptoms. It is not credible that the Appellant could experience such extreme symptoms but fail to report them to the treating physicians.
 

 This finding indicates that the SHO found Petitioner's testimony regarding her symptoms "not persuasive" because there were "inconsistencies with the medical evidence." However, the record reveals that Petitioner testified as to a number of other symptoms besides migraine headaches, including-without limitation-severe lower back pain, weakness in her legs, anxiety, and depression. Yet Finding No. 7 solely discusses Petitioner's testimony regarding her migraine headaches. Therefore, to the extent the Agency Decision attempted to impute the lack of credibility it attached to her testimony regarding the migraine headaches to her testimony regarding all of her remaining impairments, the agency erred.
 

 C. Reliance on the Social Security Decision
 

 Petitioner also challenges the degree of reliance the SHO placed on the Social Security Decision. Finding No. 6 of the Agency Decision states as follows:
 

 6. In an October 2013 decision, the [SSA] Administrative Law Judge opined that the Appellant has the residual functional capacity to perform light work with occasional posturals; no climbing of ladders, ropes or scaffolds; frequent bilateral fingering; and avoidance of concentrated exposure to hazards. Appellant was also limited to simple, routine, repetitive work with occasional public contact. This opinion is given great weight as it is consistent with and supported by the objective evidence.
 

 *575
 
 SSA regulations provide that "[a]dministrative law judges ... are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3,
 
 1996 WL 374180
 
 (July 2, 1996). Thus, while it would have been proper for the SHO to consider the medical and psychological testimony produced during Petitioner's Social Security hearing, it was error for the SHO to simply make the blanket assertion that it was relying on the Social Security Decision
 
 as a whole
 
 as opposed to (1) identifying opinions from specific providers that were obtained during the Social Security hearing; and (2) explaining why it was according weight to those opinions. Therefore, we direct DHHS on remand to clarify which specific providers' opinions from the Social Security hearing
 
 *197
 
 that it is relying upon-if any-and to explain the weight it is giving those opinions.
 

 D. Vocational Expert Testimony
 

 Finally, Petitioner argues that DHHS erred in failing to produce vocational expert testimony at the 8 October 2014 hearing. She asserts that because she suffered from nonexertional impairments, such expert testimony was required and that the SHO erred in instead relying solely on the medical-vocational guidelines (commonly known as the "grids").
 
 [4]
 

 20 C.F.R. § 404.1560
 
 provides that "[w]e
 
 may
 
 use the services of vocational experts or vocational specialists, or other resources ... to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."
 
 20 C.F.R. § 404.1560
 
 (2016) (emphasis added). A review of federal caselaw applying
 
 20 C.F.R. § 404.1560
 
 reveals that vocational expert testimony is necessary only in certain circumstances during Step 5 of the evaluation process.
 
 See, e.g.
 
 ,
 
 Boylan v. Astrue
 
 ,
 
 32 F.Supp.3d 238
 
 , 251-52 (N.D.N.Y. 2012) ("If the claimant has nonexertional impairments, the ALJ must determine whether those impairments 'significantly' diminish the claimant's work capacity beyond that caused by his or her exertional limitations.... [and if so], then the use of the Grids
 
 may
 
 be an inappropriate method of determining a claimant's residual functional capacity and the ALJ
 
 may
 
 be required to consult a vocational expert." (citations omitted and emphasis added));
 
 Sherby v. Astrue
 
 ,
 
 767 F.Supp.2d 592
 
 , 595 (D.S.C. 2010) ("While not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids, the proper inquiry is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." (citation, quotation marks, and ellipsis omitted)).
 

 On remand, we direct DHHS to evaluate Petitioner's nonexertional impairments as compared to her exertional impairments. If it determines that Petitioner's nonexertional impairments significantly diminish her capacity to perform the full range of light work beyond the degree caused by her exertional impairments, DHHS shall use vocational
 
 *198
 
 expert testimony in order to determine whether jobs exist in significant numbers in the national economy that Petitioner can perform given her residual functional capacity.
 
 [5]
 

 Conclusion
 

 For the reasons stated above, we vacate the trial court's 4 January 2016 order and direct the court to remand this matter to
 
 *576
 
 DHHS for additional proceedings consistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges INMAN and ENOCHS concur.
 

 [1]
 

 In addressing Petitioner's arguments on appeal, we therefore look for guidance to federal Social Security regulations and decisions by federal courts interpreting those regulations.
 
 See
 

 Henderson v. N.C. Dep't of Human Resources
 
 ,
 
 91 N.C.App. 527
 
 , 531-32,
 
 372 S.E.2d 887
 
 , 890 (1988) ("Although federal court decisions interpreting the applicable statutes and regulations are not binding on North Carolina courts ... we deem the well-reasoned federal decisions discussed herein to be persuasive authority." (internal citation omitted));
 
 see also
 

 Lackey
 
 ,
 
 306 N.C. at 236
 
 ,
 
 293 S.E.2d at 175
 
 ("These federal decisions ... are not necessarily controlling on this court. However, we do deem them to be persuasive authority on the relevant issues." (internal citations omitted)).
 

 [2]
 

 It is not entirely clear from the Agency Decision whether the SHO found that Petitioner had met Steps 1 through 4. However, because the SHO proceeded to Step 5, we assume that the SHO first determined that Step 4 had been satisfied. We note that in its brief DHHS states that "the [SHO] found Petitioner had met her burden at step four." On remand, we direct DHHS to clearly articulate its application of each step of the sequential evaluation process.
 

 [3]
 

 20 C.F.R. § 404.1567
 
 (b) provides the following definition of "light work":
 

 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 

 20 C.F.R. § 404.1567
 
 (b) (2016).
 

 [4]
 

 The "grids" are the Medical-Vocational Guidelines located in Appendix 2 of
 
 20 C.F.R. § 404
 
 , subpart P. Appendix 2 provides information from the Dictionary of Occupational Titles regarding jobs that exist in the national economy that are classified by exertional and skill requirements.
 
 See
 

 20 C.F.R. § 404.1569
 
 (2016). Appendix 2 provides rules that determine whether a person is engaged in substantial gainful activity and whether the person is prevented by a severe medically determinable impairment from doing vocationally "relevant past work."
 

 Id.
 

 [5]
 

 While DHHS argues that Petitioner was, in fact, examined by a vocational expert in connection with the Social Security hearing, the Agency Decision-as noted above-merely references the Social Security Decision as a whole rather than referring to any specific expert testimony elicited during that hearing. Moreover, we note that the Social Security hearing took place in 2013.