IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-387

Filed 19 November 2024

Mecklenburg County, No. 19 CVS 23222

BRENETTA TAYLOR-COLEMAN, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH & HUMAN SERVICES DIVISION OF CHILD DEVELOPMENT AND EARLY EDUCATION, Respondent.

Appeal by Petitioner from an order entered 4 October 2023 by Judge Daniel A. Kuehnert in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 October 2024.

*Mark Hayes for petitioner-appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Amber I. Davis, for respondent-appellee.*

WOOD, Judge.

Brenetta Taylor-Coleman ("Petitioner") appeals from the superior court's order affirming a final decision of the North Carolina Office of Administrative Hearings ("OAH"). The North Carolina Department of Health and Human Services, Division of Child Development and Early Education (the "Division"), placed Petitioner on the Child Maltreatment Registry. OAH upheld the placement, and the superior court affirmed the final decision. On appeal, Petitioner challenges the determination of her

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

placement on the registry.  For the reasons set forth below, we affirm the superior court's order.

## I.    Factual and Procedural Background

Petitioner was the owner, operator, and director of two licensed child care centers, namely: Ms. Chop's Child Development ("Ms. Chop's") and Ms. Chop #2 Academy ("Ms. Chop #2").  Both facilities were in Mecklenburg County and Ms. Chop's operated out of Petitioner's home.  The Division is an agency that provides the mandatory licensing of North Carolina child care facilities. N.C. Gen. Stat. § 110-85. In relevant part, the Division has the duty to oversee these facilities, "ensur[e] that these facilities provide a physically safe and healthy environment where the developmental needs of these children are met[,]"  and certify that the operators are qualified and of "good moral character." *Id.*  Likewise, the Division is required to complete inspections of these facilities and investigate any reports or complaints filed. N.C. Gen. Stat. § 110-105.

On 28 June 2018, the Division received a report that an incident involving two children had occurred at Ms. Chop #2 two days prior.  The report alleged Russ[1], a twelve-year-old child, "pulled another child's pants down and 'sucked' his private area."  The other child, John[2], is Petitioner's grandson.  The Division began its

---

[1] A pseudonym is used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

[2] See n.1.

TAYLOR-COLEMAN v. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

investigation into the complaint and assigned Rhonda Carey, an investigations consultant, to the matter. Ms. Carey conducted interviews with the individuals involved, the child care providers at Ms. Chop #2, Petitioner, John's mother, and Russ' foster parent. The investigation revealed: on 26 June 2018, Ms. Graham, a volunteer provider at the facility, was the only staff member outside supervising a group of eleven children whose ages ranged from three to twelve years old. Ms. Graham was unable to see and hear all the children at all times. Ms. Graham observed Russ and John playing in an area where they could not be seen and redirected them to the playground; she then observed John with his pants down and Russ "sucking on [John's] private part."

Ms. Graham immediately separated the children, took Russ inside, and notified Petitioner of the situation. The events that occurred next were disputed at the hearing. Russ stated that "Aunt Net" hit him on the back of the head using her hand, but the children typically referred to Petitioner as "Ms. Chops." However, Ms. Carey's investigation revealed that it was Petitioner who hit Russ on the back of the head and yelled at him. Ms. Graham reported that Petitioner stated, "You know better[,]" "You better not ever put your mouth on my grandson[,]" and "I'll kill you[.]" Ms. Lowe, an employee who was inside the facility during the incident, corroborated Ms. Graham's statement that it had been Petitioner who hit Russ.

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

Based on Ms. Carey's findings during the investigation, the Division cited Ms. Chop #2 for numerous violations of North Carolina Law and the North Carolina Child Care Rules. The Division was then required to determine whether the case constituted "child maltreatment" which is defined as "[a]ny act or series of acts of commission or omission by a caregiver that results in harm, potential for harm, or threat of harm to a child." N.C. Gen. Stat. § 110-105.3(b)(3). The Division concluded evidence that Petitioner "used [her] hands and fists to hit [Russ] on the back of the head and threatened to kill [him]" was sufficient to support a finding of child maltreatment. Consequently, on 31 October 2018, the Division provided Petitioner with a Notice of Pending Placement on the North Carolina Child Maltreatment Registry (the "Registry") and Disqualification. The Notice informed Petitioner she was entitled to an administrative hearing prior to being placed on the Registry and that, effective immediately, Petitioner was prohibited from working in childcare in North Carolina.

In addition to the Division's action of starting the process to place Petitioner on the Registry, the Division issued three administrative actions, including one for the revocation of Petitioner's license to operate Ms. Chop #2. Subsequently, Petitioner filed four petitions for contested case hearings at OAH, appealing the Registry action and the three administrative actions by the Division: (1) Petitioner's placement on the Registry; (2) the Division's decision to summarily suspend

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

Petitioner's license to operate Ms. Chop's; (3) the Division's decision to revoke Petitioner's license to operate Ms. Chop #2; and (4) the Division's decision to revoke Petitioner's license to operate Ms. Chop's. On appeal, Petitioner does not challenge the Division's revocation and closure of Ms. Chop's and Ms. Chop #2; rather, Petitioner challenges her placement on the Registry. Therefore, we do not address the alleged violations and conclusions of the Division as it relates to these facilities. *See Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." "Furthermore, the scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal." (citations omitted)).

On 9 August 2019, a hearing was held on Petitioner's petitions. On 2 October 2019, the administrative law judge at OAH issued a final decision, affirming the administrative actions filed by the Division. The judge concluded that the Division properly determined that Petitioner's actions rose to the level of child maltreatment and that her actions warranted placement on the Registry. Petitioner appealed and petitioned the superior court for judicial review of the final decision of the OAH. A hearing was conducted in the superior court on 29 August 2023. The court affirmed the OAH's final decision by order dated 3 October 2023. Petitioner filed notice of appeal to this Court on 31 October 2023.

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

## II.    Analysis

On appeal, Petitioner argues the superior court erred in affirming OAH's decision to place Petitioner on the Registry.  Petitioner argues that the grounds for her placement on the Registry—that Petitioner struck Russ on the back of the head and threatened him—was unsupported by the evidence presented at the OAH hearing.

### A. Standard of Review

When the superior court "acts in the capacity of an appellate court[,]" as it "exercises judicial review over an agency's final decision," "[t]he standard of review for our Court upon an appeal from an order of the superior court affirming or reversing an administrative agency decision is the same standard of review as that employed by the superior court." *N. Carolina Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004) (citations omitted); *Dorsey v. Univ. of N. Carolina-Wilmington*, 122 N.C. App. 58, 62-63, 468 S.E.2d 557, 560 (1996) (citation omitted).  Our review "is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard." *Mayo v. N. Carolina State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (citation omitted).  In this case, the superior court affirmed the final agency decision, applying the whole-record standard of review.  Accordingly, we must first determine whether the whole-record test was the appropriate standard

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

of review and whether the superior court *properly* applied it to the case.

"It is well settled that in cases appealed from administrative tribunals, questions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test." *Harris v. N. Carolina Dep't of Pub. Safety*, 252 N.C. App. 94, 99, 798 S.E.2d 127, 132 (2017) (citation omitted). Here, Petitioner's appeal challenges the sufficiency of the evidence to support the conclusion that her placement on the Registry was warranted; accordingly, pursuant to N.C. Gen. Stat. § 150B-51(b)(5) and (b)(6), we review Petitioner's appeal under the "whole-record test" standard of review. We conclude the superior court applied the correct standard of review satisfying the first prong under *Mayo*.

The whole-record test requires this Court to "examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895 (2004) (citation omitted). "Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up). "This test does not allow the reviewing court to replace the [Division's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Mills v. N. Carolina Dep't of Health &*

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

*Hum. Servs.*, 251 N.C. App. 182, 189, 794 S.E.2d 566, 570 (2016) (cleaned up). Thus, while we review the superior court's order affirming the OAH's final decision, the OAH "is the only fact-finding body of this proceeding," and we must employ the whole-record review to the OAH's final decision. *Fonvielle v. N. Carolina Coastal Res. Comm'n*, 288 N.C. App. 284, 288, 887 S.E.2d 93, 96 (2023).

Because the superior court applied the correct standard of review, we proceed to determine whether the superior court properly applied the whole-record test. We now turn our attention to a careful examination of the record evidence to determine whether substantial evidence justifies the final agency decision.

**B. Placement on the Child Maltreatment Registry**

The OAH concluded Petitioner's actions amounted to child maltreatment and warranted placement on the Registry. The superior court affirmed this conclusion. This Court and our Supreme Court have not previously addressed a caregiver's challenge to placement on the Registry. As such, this is a case of first impression. We are guided by our standard of review and look to the statutory provisions and procedures proscribed by the Division.

As discussed *supra*, child maltreatment is the commission of an act by a caregiver "that results in harm, potential for harm, or threat of harm to a child." N.C. Gen. Stat. § 110-105.3(b)(3). When reviewing whether an act of maltreatment occurred, the Division considers five factors: (1) the severity of the incident; (2) the

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

age and developmental ability of the child; (3) evident disregard of consequences; (4) maltreatment history and previous similar incidents; and (5) future risk of harm. If the Division determines the incident rose to the level of child maltreatment, the caregiver is placed on the Registry. The Registry was established to maintain "names of all caregivers who have been confirmed by the Department of having maltreated a child." N.C. Gen. Stat. § 110-105.5(a). Individuals listed on the Registry are prohibited from being a caregiver at any licensed child care facility. *Id.* §110-105.5(c). Stated differently, individuals on the Registry are banned for life from working in child care.

At the OAH hearing, the Division presented evidence supporting Petitioner's placement on the Registry through the testimony of Ms. Carey. By pre-trial order, the judge permitted Ms. Carey to testify about statements made by Russ and John during her investigation because the children were not called to testify. Ms. Carey further testified about Ms. Graham and Ms. Lowe's recollection of the incident, since both witnesses failed to appear at the hearing. Her testimony centered on the findings from her investigation and statements made by the individuals involved, as reported in her investigation documentation. Petitioner now argues that the judge "had no ability to assess the credibility of the actual sources of the statements upon which Ms. Carey's conclusions were based[,]" since none of these witnesses testified. Further, even if Ms. Carey's testimony was credible, her testimony failed to identify

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

that Petitioner was the one who struck Russ, since Russ stated "aunt Net" was the one who hit him. For these reasons, Petitioner argues the judge erred in relying on statements from non-testifying witnesses, without the ability to assess their credibility, and for definitively determining that Petitioner was the one that struck Russ when he stated it was "aunt Net."

We are tasked therefore with determining whether there was substantial evidence presented, when viewing the record as a whole, which justifies the conclusion that Petitioner must be placed on the Registry. Such evidence must be "more than a scintilla or a permissible inference." *Lackey v. N. Carolina Dep't of Hum. Res., Div. of Med. Assistance*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (citation omitted). Further, the decision must have "a rational basis in the evidence." *ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C.*, 345 N.C. 699, 706-07, 483 S.E.2d 388, 392 (1997) (citations omitted).

We note, it is well settled that the judge presiding over the administrative hearing is left "to determine the weight and sufficiency of the evidence and the credibility of the witnesses" and "[t]he credibility of witnesses and the probative value of particular testimony are for the [ALJ] to determine, and [the ALJ] may accept or reject in whole or part the testimony of any witness." *Brewington v. N. Carolina Dep't of Pub. Safety, State Bureau of Investigation*, 254 N.C. App. 1, 13, 802 S.E.2d 115, 124 (2017) (citation omitted). Furthermore, Petitioner had the burden of

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

proof in the hearing at OAH, and "the ALJ is to determine whether the petitioner ha[d] met its burden" of showing that the Division acted erroneously. *Britthaven, Inc. v. N. Carolina Dep't of Hum. Res., Div. of Facility Servs.*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459 (1995). Thus, we must defer to the ALJ's determination about the weight and credibility assigned to the evidence and witnesses.

When reviewing the entire record, the findings of fact, and the conclusions of law, we conclude the OAH decision had a rational basis in the evidence. The ALJ based its decision on Ms. Carey's testimony and her investigation documentation. The documentation detailed information gathered from her interviews with the individuals involved throughout several months. Specifically, Ms. Graham reported during her interview that Petitioner struck and threatened Russ and Ms. Lowe confirmed Ms. Graham's statements. Further, Ms. Carey testified that, despite Russ' statement that "Aunt Net" hit him, her investigation later revealed Russ called Petitioner by this name. Therefore, Ms. Carey's determination was not solely based on Russ' statement but was confirmed by Ms. Graham and Ms. Lowe who witnessed the incident. At the hearing, Petitioner questioned Ms. Carey about the statements made by the non-testifying witnesses and the identity of who hit Russ; however, it was ultimately to the discretion of the judge to determine each witness' credibility. In light of this evidence, under the whole-record test, we hold there was substantial evidence to support the OAH decision.

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

As a final note, we cannot over emphasize the footnote in the superior court's order which states:

> This court, understanding how serious the findings were, is, however, very troubled by the apparent inability of our State's law to, at least, provide some future hope to the [Petitioner] to be removed from this registry; a person who ran her child care(s) for 21 years and who has a long-demonstrated care for and love of children. The court can offer no hope of her ever being removed from the Child Maltreatment Registry when we give sex offenders the right to petition to be removed from the Sex Offender Registry after ten (10) years, and when many criminals can have their felony convictions expunged from their court record.

The superior court articulated strong public policy issues that are persuasive to this Court. Notwithstanding, this Court is without the authority to redress this issue, as it rests solely within the policy-making authority granted to our legislature. We recognize the disparities of the laws governing the Child Maltreatment Registry and invite the General Assembly to speak to the issues raised and concerns expressed by the superior court and shared by this Court. While we are sympathetic to Petitioner's situation, as her placement on the Registry resulted from her emotional response to her four-year-old grandson being sexually assaulted by a twelve-year-old child, this Court is only permitted to exercise its judicial powers. Thus, we are constrained to hold Petitioner failed to prove her placement on the Registry was not warranted, as we are not permitted to "replace the [Division's] judgment as between two reasonably conflicting views." *Mills*, 251 N.C. App. at 189, 794 S.E.2d at 570. Accordingly, we

TAYLOR-COLEMAN V. N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF CHILD DEV. & EARLY EDUC.

*Opinion of the Court*

affirm the superior court's order.

## III.  Conclusion

For the foregoing reasons, we affirm the superior court's order, affirming the final decision of the OAH.  We conclude that under the whole-record test, there was substantial evidence sufficient to support OAH's order to uphold the Division's decision to list Petitioner on the Registry.

AFFIRMED.

Judge ARROWOOD concurs.

Judge STADING concurs in the result only.